UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC KELLEY )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>GOVERNOR DEVAL PATRICK, et al., )<br>      Defendants. ) | C.A. No.   13-12513-LTS |

MEMORANDUM AND ORDER

SOROKIN, M.J.

BACKGROUND

Plaintiff Eric Kelley[1] is an inmate in the lawful custody of the Massachusetts Department of Correction ("DOC") and is now housed at the Massachusetts Substance Abuse Center ("MASAC") in Bridgewater, Massachusetts. He filed a complaint accompanied by an Application to Proceed Without Prepayment of Fees and a Motion for Appointment of Counsel.

Kelley brings this action pursuant to 42 U.S.C. § 1983 seeking equitable and monetary relief for the alleged violation of his federal constitutional rights. See Complaint ("Compl."). The complaint concerns primarily (1) the conditions of confinement at MASAC; (2) the failure to place plaintiff in a lower security status; and (3) the denial of access to the courts. Id. Additionally, the initial factual allegation in the complaint concerns Kelley's brief statement that his lawful sentence expired on May 28, 2013.[2] Id. at p. 2. The twenty-one (21) defendants named in the case caption are the Governor and Lieutenant Governor; the Commissioner of

---

[1] The Court's records indicate that Eric Kelley is a frequent litigant who has referred to himself both as Eric Kelley and Eric Jirah Kelley. See e.g., Kelley v. Sheriff DiPaulo, C.A. No. 04-11192-NMG (D. Mass. closed July 13, 2005) (Eric Kelley); Kelley v. Wall, et al., C.A. No. 11-10916-JLT (D. Mass. closed Feb. 1, 2012) (Eric Jirah Kelley).

[2] He alleges that he was arrested on May 28, 2003 and sentenced to ten years. Compl., p. 2.

Public Safety, the Commissioner and Assistant Commissioner of Public Health, the Director of the Board of Health, a Massachusetts state court judge, an assistant district attorney, the editor of the Boston Herald newspaper, the State Auditor, seven members of the Governor's Council and four Department of Correction officials.  Id. Plaintiff seeks monetary damages as well as the "Condemnation of the Massachusetts Alcohol & Substance Abuse Center (MASAC)" and a federal investigation into "the mis-appropriation of funds designated for re-entry, reintergration (sic) and lower security programs, placement and funding."  Id. at p. 17.

## DISCUSSION

I.    The Motion for Leave to Proceed In Forma Pauperis

Upon review of Kelley's financial disclosures in his *in forma pauperis* motion and his prison account statement, this Court will ALLOW his Motion for Leave to Proceed *in forma pauperis* (Docket No. 3).  Nevertheless, because Kelley is a prisoner as defined by 28 U.S.C. § 1915(h), he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).

In light of this, it is hereby Ordered that:

A.   Plaintiff is assessed an initial partial filing fee of $18.60, pursuant to 28 U.S.C. § 1915(b)(1)(A);[3] and

B.   The remainder of the fee $331.40 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

For purposes of clarification for crediting any funds received, and to facilitate proper

---

[3]In support of his *in forma pauperis* motion, Kelley submitted his Inmate Transaction Report from January 1, 2013 to September 26, 2013.  This assessment was based on a manual calculation of 20% of the average monthly deposits over the period reflected in his Inmate Transaction Report and is made without prejudice to seeking reconsideration provided he submits an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b).  This assessment also is made notwithstanding that Kelley presently may not have sufficient funds to pay the initial partial assessment; the *in forma pauperis* statute provides for assessment at the time of filing of the action, but collection only "when funds exist."  28 U.S.C. § 1915(b)(1).

record-keeping by the District Court Clerk's Office Accounting Department, this Court intends that any funds received from Kelley's prison account first be applied to any prior Order of a Court (if any) assessing a filing fee pursuant to 28 U.S.C. § 1915.  Kelley's filing fee payments for this action shall be collected consecutively and not simultaneously with any prior filing fee obligation imposed by any court.  See Lafauci v. Cunningham, 139 F. Supp. 2d 144, 147 (D. Mass. 2001)(reviewing decisions of the courts of appeals for the Second, Seventh, and District of Columbia circuits, and indicating that "the simultaneous collection of filing fees from indigent prisoners may raise serious constitutional concerns").

II.     The Complaint is Subject to Screening

Kelley's Complaint is subject to the provisions of the Prison Litigation Reform Act 1995 ("PLRA"), Title VIII of Pub. L. 104-134, 110 Stat. 1321-1375 (1996).  The PLRA contains provisions which grant courts the authority to screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings *in forma pauperis*);[4] 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[5]

In conducting a preliminary review, the Court liberally construe the Complaint because

---

[4]Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §1915(e)(2).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

[5]Section 1915A of Title 28 authorizes courts to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

Kelley is proceeding *pro se*.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  Even under a broad reading, however, this action is subject to dismissal for the reasons set forth below.

> III.     Section 1983

In order to state a Section 1983 claim, a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992).

> A.     State Action

The complaint names a private individual, the Editor of the Boston Herald, as a defendant.  Section 1983 does not provide relief against most private individuals or entities because of the requirement that a deprivation be caused by a person acting under "color of state law."  Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 49 (1st Cir. 2000).   Here, there are no allegations, or even the suggestion, that this defendant acted under color of state law.  Thus, plaintiff's civil rights claim against the editor of the Boston Herald is subject to dismissal.

> B.     Judicial and Prosecutorial Immunity

The case caption of the complaint names as defendants Judge Jeffrey Locke and Assistant District Attorney Maliek Masia King.    There is no further mention of these two defendants within the body of the complaint.  Plaintiff's allegations fail to explain how these two defendants violated the law or caused any damage to Plaintiff.

"It is well-established that 'only those individuals who participated in the conduct that

deprived the plaintiff of his rights can be held liable'" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).  "[C]ourts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." Morabito v. Blum, 528 F.Supp. 252, 262 (S.D.N.Y.1981) (citing cases).

Moreover, to the extent plaintiff's claims against Judge Locke concern acts he performed within the scope of his jurisdiction, such claim is not cognizable because absolute judicial immunity protects judges from liability for acts performed within the scope of their jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages"); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process).  Similarly, the Assistant District Attorney is entitled to absolute prosecutorial immunity for her actions in connection with a prosecution.  Imbler v. Pachtman, 424 U.S. 409, 422 (1976) (absolute judicial immunity extends to prosecuting attorneys acting within the scope of their official duties);  Reid v. State of N.H., 56 F.3d 332, 337 (1st Cir. 1995).

Accordingly, Plaintiff's claims against Judge Locke and ADA King are subject to dismissal for failure to state a claim upon which relief may be granted.

    C.    <u>Sovereign Immunity</u>

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity

under the Eleventh Amendment.[6]  Alabama v. Pugh, 438 U.S. 781, 781 (1978) (per curiam). Unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, ... a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) (citing Pugh).  A civil rights suit pursuant to 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979).   Here, the Commonwealth of Massachusetts has not consented to suit and the claims for monetary damages are barred by the Eleventh Amendment.  See Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (stating that there has been no unequivocal abrogation of the Commonwealth's Eleventh Amendment immunity); see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-144 (1993) (11th Amendment operates as a withdrawal of jurisdiction).

The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n. 11 (1984).  Here, the doctrine of sovereign immunity precludes Plaintiff's claims for damages against the state defendants in their official capacities.

---

[6]The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

D.  Respondeat Superior is Not a
    Viable Theory of Liability Under Section 1983

To the extent that plaintiff's claims against defendants the Governor, Lieutenant Governor, the Commmisioner of Public Saafety, the Commissioner of Corrections, the Commissioner and Associatate Commissioner of the Department of Public Health and the Board of Health Director are premised on a theory of supervisory liability for the actions of their employees, plaintiff's claims are subject to dismissal because respondeat superior is not a valid theory of liability under Section 1983.  Liability under Section 1983 is direct, not vicarious, and can only be imposed upon officials who were involved personally in the alleged deprivation of constitutional rights.  Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (no respondeat superior liability under § 1983); Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987) (supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor); accord Rodriguez-Vazquez v. Cintron-Rodriguez, 160 F. Supp. 2d 204, 210-213 (D. P.R. 2001) (dismissing claims, allegation that defendant was "ultimately responsible for the selection and/or supervision and/or training and/or discipline of his subordinates" insufficient).

E.  Classification

As to Kelley's classification, the complaint alleges that the DOC classification office denied Kelley's request for Boston Pre-Release despite the fact that the Superintendent found Kelley eligible for such pre-release placement.  With his complaint, Kelley attached copies of a classification report as well as part of the 2005 preliminary report of the Department of Correction Advisory Council concerning the implementation of recommendations by the Governor's Commission on Corrections reform as to reduction of the rate of re-offense by returning inmates as well as revising sentencing laws and DOC policies create barriers to

appropriate classification and programming.  See Compl., Exhibits.   Kelley argues that without a lower security placement with re-entry and re-integration programs, upon his eventual release he will become homeless, destitute and may seek self-medication through substance abuse. Compl., at p. 6.  Kelley argues that state and federal funds have been allocated and that there has been "criminal misappropriation of funds."  Id.   In this regard, Kelley alleges that the Boston Herald has "systematically worsened the problem by shunning this public safety issue after continuous notification and documentation."  Id.

To the extent plaintiff complains of his confinement to the MASAC, an inmate has no liberty interest in being housed or classified in a particular facility or in a particular security status. Meachum v. Fano, 427 U.S. 215, 225 (1976). As prison inmates do not have any liberty interest in where they are housed, transfers within the prison are well within the discretion of prison officials, and inmates are not protected from such transfers by the constitution. See Olim v. Wakinekona, 461 U.S. 238, 244–45 (1983) (citing Meachum, 427 U .S. at 224–25, to support the conclusion that prisoners have no liberty interest protecting them from housing transfers).

In order to establish a violation of procedural due process based on his custody classification and resulting ineligibility to be placed at Boston Pre-Release, Kelley must allege (1) that he had a protected liberty interest in his custody classification or placement in the pre-release facility and (2) that defendants' actions adversely affected those interests without the protections of due process granted by the Fourteenth Amendment.  See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

Here, Kelley argues that the DOC classification officials were wrong to overrule the Superintendent's approval of his reclassification for pre-release.   Kelley alleges that he filed a lawsuit in state court concerning the "lower security denial."  Compl., at p. 5.  He alleges that the

Central Office defendants deem him to be a "management problem" based solely on his attempts to exercise his constitutional rights through litigation. Id. Plaintiff explains that the defendants have deemed him to be "a 'frequent litigator' althoygh (sic) this plaintiff has never been deemed a 'frivilous petitioner' and all of his dismissal(s) were for procedual (sic) aspects." Id.

Construing Kelley's claims generously, he is attempting to state due process and equal protection claims. However, these conclusory statements are not sufficient to state a claim, as required by Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The allegations in the complaint fails to link up Kelley's litigation history with the specific actions of any of the individual defendants. Moreover, it is not clear what basis Kelley relies upon for his equal protection claim. He makes vague reference to being treated differently from similarly situated individuals. Plaintiff has provided no facts to indicate that any defendant acted intentionally and that there was no rational basis for the difference in treatment. These conclusory statements are not sufficient to state a claim, as required by Iqbal.

    F.    <u>Access to the Courts</u>

As to Kelley's claim of denial of access to the courts, he alleges that the MASAC law library is grossly inadequate. Compl., p. 9. He complains that there are less than 15 law books, which are outdated. Id. He complains that there are no inmate law clerks or law librarians. Id. He contends that he has several pending cases; both civil and criminal. Id. Kelley alleges that the state auditor, Suzanne Bump, is "responsible to the Massachusetts tax-payers to ensure that money is legally and properly allocated." Id. at p. 3. Plaintiff complains that seven members of the Governor's Council have "disregarded the legislative mandates of the tax-payers, have not monitered (sic) the money of the tax-payers, and have taken part in the risk to public safety." Id.

at p. 2.

Inmates have a right to "meaningful access to the courts," which may, but need not, include access to a law library. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 830, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). To have standing to sue, Kelley must demonstrate an actual injury stemming from the purported violation. Id. at 351, 116 S.Ct. 2174. Here, Kelley has not alleged any actionable prejudice or harm that resulted from the allegedly inadequate law library and thus the complaint fails to state a claim concerning access to the courts.

      G.     Conditions of Confinement

As to the conditions of confinement, Kelley alleges that three state public health officials have not "rectified, monitered (sic), investigated, inspected and taken (any) action in their official capacities regarding health at the Mass. Alcohol, and Substance Abuse Center." Id. at p. 2. Kelley alleges that MASAC "is in gross violation of the Minimum Health and Sanitation mandates of the state" concerning the lack of heat, ceilings caving in due to rain, non-existent ventilation, adverse tempetures, and inaccessability to the handicapped. Id. at pp. 7 - 8. Kelly alleges that the "Health authorities (defendants) have made many inspections, but overlook the e3xtensive, countless violations, as though they were being (bribed) to 'turn a blind and deaf eye and ear.'" Id. at p. 7. Kelley complains that the defendants have permitted these conditions 'based on budgetary constraints." Id. at p. 8. Kelley alleges that the facility is "in gross violation of the American Disability Act." Id.

The Eighth Amendment provides protection with respect to the treatment a prisoner receives in prison and the conditions under which he is confined. Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual

punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

To the extent Kelley seeks to assert a claim under the Americans With Disabilities Act ("ADA"),[7] he has not alleged that he is a qualified individual with a disability and he does not have standing to assert an ADA claim on behalf of others. He has not alleged facts that give rise to a plausible claim of standing. To satisfy the case-or-controversy requirement of Article III, Kelley must show that he has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); see also Katz v. Pershing, LLC, 672 F.3d 64 (1st Cir. 2012).

To the extent Kelley complains that the conditions at MASAC violate state law, this court does not have the power to direct state officials to comply with state law. See Quntero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992) (citing Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 106 (1984)); see also Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997) ("A regulatory violation, like a violation of state law, in not inherently sufficient to support a § 1983 claim."); Amsden v. Moran, 904 F.2d 748, 757 (1st Cir.1990) ("Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process.").

To the extent any state law violations constitute violations of federal law, or that the

---

[7]Title II of the ADA, the provision at issue here, prohibits discrimination against persons with disabilities by "public entities" which includes a state's correctional facilities. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998).

conditions at MASAC violate the Eighth Amendment, Kelley has failed to allege facts that show that one or more of the defendants were deliberately indifferent to a substantial risk of serious harm to Kelley. Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. 1970.

A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement. Fed.R.Civ.P. 8(a). However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678. Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Iqbal, 556 U.S. at 678. See also Ocasio–Hernandez v. Fortuno–Burset, 640 F.3d 1, 12 (1st Cir. 2011). Here, the conclusory allegations in the complaint are not enough to suggest deliberate indifference on the part of the defendants with respect to the conditions of Kelley's confinement.

H.      Expiration of Sentence

Kelley alleges that he was arrested on May 28, 2003, was sentenced to ten years, and that his sentence expired on May 28, 2013. To the extent Kelley may be seeking release and/or a shortened term of imprisonment, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973) (prisoner challenging the very fact or duration of his physical imprisonment and seeking determination that he is entitled to immediate release or speedier release from such imprisonment must proceed under habeas laws). Accordingly, if

Kelley seeks habeas relief to redress alleged unlawful physical confinement, he cannot seek such relief in this Section 1983 action.

IV.     Order to Either Show Cause to File an Amended Complaint

In light of the above, this action may be dismissed within 42 days of the date of this Memorandum and Order unless Kelley either shows cause why this action should not be dismissed or files an Amended Complaint curing the deficiencies noted above.  If he files an Amended Complaint, he should set forth his claims separately as to each defendant, providing the legal cause of action, the date the alleged wrongdoings occurred, and a brief statement of the nature of the alleged wrongdoing, and the reasons for the alleged wrongdoing (*i.e.*, the "who, what, when, where, and why" information necessary to set forth plausible claims under Rule 8 of the Federal Rules of Civil Procedure).

V.      Motion for Appointment of Counsel

With his complaint, Kelley filed a Motion for Appointment of Counsel.  Under 28 U.S.C. § 1915, a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The United States Court of Appeals for the First Circuit provides the following set of factors to consider when determining whether to appoint counsel to an indigent under § 1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986) *(per curiam)*; see Bemis v. Kelley, 857 F.2d 14, 16 (1st Cir. 1988).  Ultimately, to be eligible for this assistance under 28 U.S.C. § 1915, Kelley "must demonstrate that [he is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers v. Moran, 949 F.2d

15, 23 (1st Cir. 1991).

At this stage of the litigation, and in light of the complaint's failure to state a claim, this Court cannot find exceptional circumstances warranting the appointment of counsel at this time. If this case is permitted to proceed further, Kelley may file a motion for appointment of *pro bono* counsel upon good cause shown, <u>after</u> the defendant(s) have filed a responsive pleading.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's renewed Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u> and an initial partial filing fee of <u>$18.60</u> is assessed pursuant to 28 U.S.C. § 1915(b)(1)(A). The remainder of the fee is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2);

2. Within 42 days of the date of this Memorandum and Order, Plaintiff shall either file an Amended Complaint or show good cause why this action should not be dismissed;[8] and

3. Plaintiff's Motion for Appointment of Counsel (Docket No. 2) is <u>DENIED.</u>

SO ORDERED.

| | |
|---|---|
|   November 26, 2013 |  /s/ Leo T. Sorokin |
| DATE | LEO T. SOROKIN |
| | UNITED STATES MAGISTRATE JUDGE |

---

[8]This action was assigned pursuant to the Court's Program for Random Assignment of Civil Cases to Magistrate Judges. Upon receipt of Plaintiff's response to this Memorandum and Order, the undersigned will either direct the Clerk to issue summons or direct the reassignment of the case to a District Judge for further review of Plaintiff's response.